STAEHLIN, Respondent, v. HOFFMEISTER, Appellant.

St. Louis Court of Appeals, November 27, 1906.

REAL ESTATE AGENT: Written Authority: Ex Post Facto Law. The act of 1903 (Laws of 1903, page 161), declaring it a misdemeanor for any person to offer real estate for sale without written authority in certain cities, could not affect a verbal appointment of a real estate agent made prior to the passage of the act; such a construction would be in violation of section 15 of the Bill of Rights providing "that no *ex post facto* law, or law impairing the obligation of contracts, or retrospective in its operation, can be passed by the General Assembly."

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Sturdevant & Sturdevant* for appellant.

(1) In a suit by a real estate broker to recover commission or other compensation for negotiating the sale or mortgage of real estate, if the owner denies the authority under the statutes, the agent must show his authority in writing from the owner, or his attorney in fact, appointed in writing, and can recover no commission without such authority. Ses. Laws of Mo., 1903, secs. 1 and 2; Trust Co. v. Niggeman, 119 Mo. App. 56; McCarthy v. Loupe, 62 Cal. 299; Clark and Skyles on Agency, sec. 749; Nigres v. Surryhane, 67 Calif. 657; McGreary v. Satchwell, 129 Cal. 389; Dolan v. O'Toole, 129 Calif. 488; Longstrath v. Korb, 64 N. J. L. 112; Ballou v. Bergunden, 9 N. D. 285; Castor v. Richardson, 18 Col. 496; Page on Cont., sec. 692. (2) A power or authority not being complied with, being a mere power not coupled with an interest, was terminated and ceased, upon the taking effect of the Act of 1903. Clark and Skyles, secs. 181-2, also sec. 39a and b; Buckley v. Humason, 50 Minn. 195; Johnson v. Huling, 103 Pa. 498; Stevenson v. Ewing, 87 Tenn. 46; Hittson v. Brown, 3 Col. 304. (3) The Act of 1903 was legitimate exercise of the police power of the State, and intended to immediately stop and put and end to certain fraudulent practices existing in the city of St. Louis, by declaring such frauds to be misdemeanors, punishable by fine, and is not obvious to any constitutional provision. Cooley on Const. Lim., 833-851; Meyer on Vested Rights, 61 *et seq.*; St. Louis v. McCarren, 157 Mo. 301; Beeo v. Massachusetts, 97 U. S. 25; State v. Savings & B. Assn., 167 Mo. 489. (4) Our statute is directed against the act of offering property for sale without written authority

from the owner, and such an offer, after June 21, 1903, constituted an offense, for which plaintiff, under his own evidence, was guilty of a fraud, which is declared criminal by statute. Wharton Crim. Pl. and Pr. sec. 475.

*Peers & Peers* for respondent.

The Act of 1903 (Session Acts of Missouri, 1903, sections one and two, page 161) does not apply to this case because—first this act was passed after the contract in question in this case was made, the contract being made in the fall of 1902, and the act not coming into force until June, 1903, so at the date of the contract this act was not law, therefore could not apply to this contract. Trust Co. v. Niggeman, 119 Mo. App. 56. It is not immoral to sell real estate, nor is it contrary to any public policy of the State; nor was the statute of 1903 enacted for the purpose of hindering or restricting the exercise of the right of the owner to sell his land by himself or through his duly appointed agent.

STATEMENT.—The action is to recover two and one-half per cent. commission on thirteen thousand six hundred dollars, the price for which defendant sold to Morris Klein her house and lot, situated on Franklin avenue, in the city of St. Louis, and known as No. 819. Defendant and her brother, both single, lived together on Page avenue, in the city of St. Louis. Plaintiff is a licensed real estate agent in said city. His evidence tends to show that in the fall of 1902, he made a verbal contract with defendant, whereby she agreed to pay him two and one-half per cent. commission if he would find her a purchaser for her real property on Franklin avenue, willing and able to pay sixteen thousand dollars therefor. Plaintiff testified that at the time the contract was made he knew Klein wanted to buy the property and immediately after making the contract with defendant, took her brother over to Klein's place of business and in-

troduced him, and the sale of the property was then discussed between defendant's brother and Klein. Klein declined to entertain the proposition to sell him the property at sixteen thousand dollars, for the reason he thought the price was too high. Plaintiff testified that after this occasion he continued to visit defendant at her residence from time to time, in respect to the property, and on two occasions got her to reduce the price, the last time to thirteen thousand dollars and communicated these reductions to Klein but did not succeed in inducing him to buy the property; that he kept up his calls on defendant and Klein, in respect to the sale of the property, until within a few weeks of the sale. Klein had never met defendant or her brother until introduced by plaintiff. The sale was actually negotiated by Klein's brother-in-law, who took the matter up two or three weeks before the sale was made. He had no business connection whatever with plaintiff and was unaware that plaintiff had ever been appointed the agent of defendant to sell the property. His services were rendered for Klein, not for defendant, and were gratuitous. The evidence of defendant and her brother tends to show that plaintiff never visited their residence but the one time (in the fall of 1902) and that after Klein refused to purchase the property at sixteen thousand dollars, neither defendant or her brother ever saw or heard from plaintiff in regard to the property until in April, 1904, after the sale had been made, when plaintiff demanded his commission. Klein testified that when defendant's brother asked sixteen thousand dollars for the property, he declined to consider the offer and dropped the matter then and there and did not take it up again for more than a year; that he never received any other proposition for the sale of the property from plaintiff, nor did plaintiff visit his place of business or communicate with him in any way in regard to the matter, after the occasion of his introduction of defendant's brother to him.

Verdict and judgment for plaintiff for three hundred and forty dollars.

BLAND, P. J. (after stating the facts).—Defendant moved the court to peremptorily instruct the jury that plaintiff could not recover. The refusal of the court to grant this instruction is the only error relied upon for a reversal of the judgment. It is insisted that the verbal appointment of plaintiff as defendant's agent to sell the real property is void on account of the Act of 1903 (Laws of 1903, p. 161) declaring it a misdemeanor for any person, in cities of three hundred thousand or more inhabitants, to offer for sale any property without the written authority of the owner, etc. The appointment of plaintiff as defendant's agent was made in 1902, long prior to the adoption of the act. Section 15, of the Bill of Rights, provides: "That no *ex post facto* law, or law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly." Plaintiff's appointment as agent was valid when made. The appointment was not tainted with fraud. The act he was appointed to perform was not against good morals or opposed to public policy, and while his appointment might have been revoked by the defendant at any time, it was not within the power of the Legislature to terminate it or to declare it invalid by any sort of an act. Such a law would be retrospective in its operation, would impair the obligation of the agency contract and be violative of section 15 of the Bill of Rights. The peremptory instruction was properly refused and the judgment is affirmed. All concur.